**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**
By:    Mark S. Haltzman, Esquire
       Eric B. Freedman, Esquire
       Attorney ID Nos. 38957/319237
900 East Eighth Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115
MHaltzman@sanddlawyers.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| D&S Enterprises, Inc., | : | |
| | : | **Case No. 4:23-bk-13318-pmm** |
| | : | |
| Debtor. | : | |
| | : | |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE
BANKRUPTCY CODE DESCRIBING THE PLAN OF
REORGANIZATION/LIQUIDATION PROPOSED BY D&S ENTERPRISES, INC.**

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO OBJECT TO THIS PLAN OF REORGANIZATION/LIQUIDATION. THE DEBTOR BELIEVES THAT THIS PLAN OF REORGANIZATION/LIQUIDATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE.**

Dated: January 26, 2024          **Mark S. Haltzman, Esquire
SILVERANG, ROSENZWEIG
 & HALTZMAN, LLC
Telephone: (610) 263-0115
Facsimile: (215) 754-4934
mhaltzman@sanddlawyers.com**

## I.    <u>INTRODUCTION</u>

D&S Enterprises, Inc., a Pennsylvania corporation (the "Debtor"), provides this disclosure statement (the "Disclosure Statement") to all of its known Creditors and Interest Holders entitled to same pursuant to section 1125 of the United States Code, as amended (the "Bankruptcy Code"), in connection with the plan of reorganization/liquidation (the "Plan") filed by the Debtor. A copy of the Plan accompanies this Disclosure Statement. The purpose of the Disclosure Statement is to provide creditors and interest holders of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision regarding the Plan. The capitalized items used in this Disclosure Statement, if not defined herein, shall have the same meaning as indicated in the Plan.

**NO REPRESENTATIONS CONCERNING THE DEBTOR-IN-POSSESSION (INCLUDING THOSE RELATING TO FUTURE OPERATIONS, THE VALUE OF ASSETS, ANY PROPERTY, OR CREDITORS AND OTHER CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.**

On November 2, 2023, the Debtor commenced a bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Pennsylvania under Case No. 4:23-bk-13318-pmm. Since the Filing Date, the Debtor has continued in the operation of its business as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

A.    **Purpose of this Document**

This Disclosure Statement summarizes what is in the Plan and provides certain information relating to the Plan as well as the process by which the Court determines whether to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)    **BANKRUPTCY PROCESS & PROCEDURES**

(2)    **THE PROPOSED TREATMENT OF YOUR CLAIM;**

(3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

(4)    **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN;**

(5)    **THE EFFECT OF CONFIRMATION; AND**

(6)    **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. Capitalized terms not otherwise defined in this Disclosure Statement shall have the meaning ascribed to them in the Plan. The Plan is the legally operative document regarding the treatment of Claims and Interests and the terms and conditions of the Debtor's liquidation. Accordingly, to the extent that there are any inconsistencies between the Plan and Disclosure Statement, the Plan provisions govern in every such circumstance.

Bankruptcy Code Section 1125 requires a disclosure statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Bankruptcy Code section 1125(a) as "information of a kind, and in sufficient detail, about a debtor and its operations "that would enable a hypothetical, reasonable investor, typical of holders of claims or interests, of the debtor to make an informed judgment about accepting or rejecting the plan." <u>See</u> §1125(a). The Bankruptcy Court determined that the information contained in this Disclosure Statement is adequate and it has approved this document in accordance with Bankruptcy Code section 1124.

This Disclosure Statement is provided to each Creditor with a Claim that has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.    <u>Brief Explanation of Chapter 11</u>**

Chapter 11 is the principal business reorganization section of the Bankruptcy Code. Pursuant to Chapter 11, a Debtor is permitted to reorganize its business affairs for its own benefit and that of its creditors and other interest holders.

The objective of a Chapter 11 case is the formulation of a plan of reorganization of the Debtor and its affairs. The plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties. Once the plan is confirmed, all Claims against the Debtor which arose before the Chapter 11 proceeding was initiated are extinguished, unless specifically preserved in the Plan.

C.    **Disclaimers**

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE PLAN OR OTHER LEGAL EFFECTS OF THE REORGANIZATION/LIQUIDATION ON THE DEBTOR, HOLDERS OF CLAIMS OR INTERESTS, OR THE DEBTOR. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF AND THE STATEMENTS AND REPRESENTATIONS CONTAINED HEREIN ARE MADE SOLELY BY THE DEBTOR.

NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.

CERTAIN OF THE INFORMATION PROVIDED, BY ITS NATURE, IS FORWARD LOOKING, CONTAINS ESTIMATES AND ASSUMPTIONS WHICH MAY PROVE TO BE FALSE OR INACCURATE, AND CONTAINS PROJECTIONS WHICH MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE EXPERIENCES. SUCH ESTIMATES AND ASSUMPTIONS ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY, OR DESIRABILITY OF THE PLAN.

## II.  **PROCEDURE**

The Bankruptcy Court has reviewed this Disclosure Statement and entered an Order determining that these documents contain "adequate information" such that creditors can meaningfully evaluate the Plan. A copy of the Order approving the Disclosure Statement is attached enclosed herewith. Only after creditors have had an opportunity review the Plan will the Court consider the Plan and determine whether it should be approved or confirmed.

### A.    **Persons Entitled to Payment**

A creditor whose Claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who has timely filed with the Court a proof of claim which has not been objected to or disallowed prior to approval of the Plan. If you are in any way uncertain if your Claim has been correctly scheduled, you may check the Debtor's Schedules of Assets and Liabilities, filed on November 2, 2023. However, the filing of a proof of claim is encouraged.

### B.    **Hearing on Confirmation**

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

### C.    **Acceptances Necessary to Confirm Plan**

At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted. Further, the Bankruptcy Court must also determine that, under the Plan, class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such class members would receive or retain

if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### D.     <u>Confirmation of the Plan</u>

The Plan may be confirmed, if the Bankruptcy Court finds that the Plan (1) does not discriminate unfairly against such class or classes; and (2) is fair and equitable as to such class or classes as set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that, among other things, the Claimants must either receive the full value of their Claims or, if they receive less, no class with junior priority may receive anything.

## III.     <u>BACKGROUND OF THE DEBTOR</u>

### A.     <u>Description of Debtor and the Property</u>

The Debtor is a Pennsylvania corporation with a physical address of 136 Campsite Road, Bernville, Pennsylvania and maintains its office at the same location. Scot Powell is the President of the Debtor and an authorized representative of the Debtor. The Debtor is a single asset real estate entity owner of the property at 136 Campsite Road, Bernville, Pennsylvania (the "Property").

The Property is operated as a campsite with approximately 238 campsite locations on approximately 42.2 acres of land. The Property has been owned and operated as a campsite by Debtor since 1985.

### B.     <u>Financial Condition of Debtor</u>

The Debtor's assets consist of the Property. Although the Debtor currently does not have an exact value of the Property, Debtor obtained an appraisal dated January 18, 2022 from PJL Realty Advisors, Inc., (the "PJL Appraisal"). The PJL Appraisal concluded that the as-is market value of the Property is $5,000,000 as of January 18, 2022. The current indebtedness alleged by

the first position secured creditor, Hopkins, is $2,722,789.18 as of November 2, 2023. The amount of the judgment confessed by Hopkins is not disputed by Debtor.

### C.    **Management of the Debtor**

Management of the Debtor will be undertaken by existing management. Scot Powell, in his capacity as the President of D&S Enterprises, Inc., will continue to manage the Debtor.

### D.    **Significant Events Post-Filing**

None at this time.

### E.    **Actual and Projected Recovery of Preferential or Fraudulent Transfers**

The Debtor does not anticipate that any preferential or fraudulent transfer actions will be filed.

### F.    **Post-Bankruptcy Operations**

Since the Filing Date, the Debtor has filed or will file all operating reports and has paid or will pay all required fees to the Office of the United States Trustee. The Debtor will continue to file all reports and pay all fees as they become due.

## IV.    **SUMMARY OF PLAN OF REORGANIZATION/LIQUIDATION**

The Plan proposes that Debtor remain in possession of the Property pending a refinancing of the Property, a sale of the Property under Section 363 of the Bankruptcy Code or a sale of the Property through an auction. Debtor has submitted the Plan with a refinancing term sheet (referred to in the Plan as the "Tovia Term Sheet"). If the refinancing of the Property under the Tovia Term Sheet does not close/fund, or if the 363 sale does not occur, then Debtor will proceed to auction the Property for sale with a floor sale price of Four Million Dollars ($4,000,000.00). The Debtor believes that the proposed refinancing or sale of the Property represents the most likely means of achieving full repayment of Debtor's secured and unsecured

creditors who are subordinate to Hopkins. If Hopkins is permitted to execute upon its confessed judgment, the Debtor believes that Hopkins will likely take possession of the Property by credit bid at a sheriff's sale in execution upon its judgment, resulting in no sale proceeds for distribution to Debtor's other creditors.

A.    **What Creditors and Interest Holders Will Receive Under the Proposed Plan**

The Plan classifies Claims and Interests into various classes. The Plan states whether each class of Claims or Interests is impaired or unimpaired. The Plan provides the treatment each class will receive. The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan itself. The Plan, if confirmed, will be binding upon the Debtor, its creditors and shareholders. All creditors are urged to carefully read the Plan.

B.    **Unclassified Claims**

Certain types of Claims are not placed into voting classes. They are not considered Impaired because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has <u>not</u> placed the following Claims in a class:

1.    **Administrative Expenses and Fees**

Administrative expenses are Claims for fees, costs or expenses of administering the Debtor's chapter 11 cases which are allowed under the Bankruptcy Code section 507(a)(1), including all professional compensation requests pursuant to section 330 and 331 of the Bankruptcy Code.

i.    **Time for Filing Administrative Claims**

The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within (30)

days after the Confirmation Date. Such notice must include at a minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim and (iii) the basis of the Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

### ii.     Time for Filing Fee Claims

Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within sixty (60) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged.

### iii.    Allowance of Administrative Claims

An Administrative Claim with respect to which notice has been properly filed pursuant to Section 4.1 (a) the Plan shall become an Allowed Administrative Claim if no objection is filed after thirty (30) days lapses from the filing and service of notice of such Administrative Claim. If an objection is filed within such (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the Extent allowed by Final Order.

### iv.    Payment of Allowed Administrative Claim

Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date so long as such modification of treatment made by the Debtor and any holder of an allowed administrative claim does not impair any other class, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

**v.**      **Professionals Fees Incurred After the Effective Date**

Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid. Neither Bankruptcy Court approval, nor consent of creditors whose claims may be impaired by the payment of post-confirmation Professional Fees, is required. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

**2.**      **Priority Tax Claims**

Priority Tax Claims are certain unsecured income, real estate, employment and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) Priority Tax Claim receive the present value of such Claim in one lump sum if the Claim is ultimately allowed after any objection by the Debtor is litigated to conclusion or settled.

**C.**      **Treatment of Classes of Claim**

The Plan divides Claims and Interests into various separate classes. Under the Plan, there are three (4) separate classes of creditors (Classes 1 through 4).

**Class 1.**      Priority Tax Claims. Class 1 consists of Secured Claims of any taxing authorities.

The Allowed Class 1 Claim shall be paid from the proceeds of any refinancing of the Property or the sale of the Project, or such other provision as may apply for payment of Allowed Claims.

**Class 2**.        Secured First Mortgage Claim of Hopkins Loan Services. The Class 2 Claim is considered to not be Impaired and is currently unliquidated. Based on available information, the Debtor assumes that Class 2 creditor, Hopkins, will assert a Secured Claim based on its confessed judgment of $2,722,789.18 as of November 2, 2023.

Such Claim is based upon an Open End Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing (collectively, the "Mortgage") and certain pre-petition loan documents.

The amount of Hopkins' confessed judgment is not disputed by Debtor.

The unpaid principal balance of the Class 2 Claim shall accrue interest at regular rates under the applicable loan documents from and after the Effective Date through the date of Sale pursuant to this Plan. Such interest, however, shall not accrue on unpaid interest, late charges or fees.

Debtor asserts that, based on the PJL Appraisal, the value of the collateral for the Hopkins loan equals or exceeds the amount of the Claim and therefore the Claim of Hopkins should be treated as a fully-secured Claim.

The Allowed Class 2 Claim shall be paid from the proceeds of any refinancing of the Property or the sale of the Project, or such other provision as may apply for payment of Allowed Administrative Claims, Allowed Priority Tax Claims and payment to the Holders of Class 3 Claims and Class 4 Claims. Alternatively, the Allowed Secured Claim shall be paid from the proceeds of sale of the Project by auction with a floor sale price of Four Million Dollars ($4,000,000.00). The Debtor believes that the Class 2 Claim will not be Impaired. Based on the Tovia Term Sheet with a loan amount of $3,350,000.00 and subject to determination of the Allowed Secured Claim, the expected proceeds of any refinancing or sale are expected to be

sufficient to pay in full the Allowed Class 2 Claim.

As a result of the planned liquidation of the Project sale or reorganization through a refinancing of the Property, there will be proceeds available for Distribution hereunder to Administrative Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims and Class 4 Claims that would not be available if Hopkins proceeded to execute upon its confessed judgment and took possession of the Project by credit bid at a subsequent sheriff's sale (as expected if Debtor's Case does not proceed).

Pursuant to the Plan, the Property is to be refinanced or sold free and clear of all Claims and Liens, including the Mortgage of Hopkins, either pursuant to a refinancing, the highest and best bidder under at a Sale under Section 363 of the Bankruptcy Code or by sale at auction. The treatment and consideration to be received by Hopkins, as holder of an Allowed Secured Claim, shall be in full settlement, satisfaction, release and discharge of its Claim and Lien on the Project.

Upon the Effective Date, Hopkins shall withdraw its confessed judgment and dismiss all related litigation with respect thereto pending sale under a Section 363 protocol or sale at auction.

The Debtor believes that Hopkins is the sole Class 2 creditor.

**Class 3**.        <u>General Secured Claims</u>. The Class 3 Claims are not Impaired. Class 3 Claims are expected to include Claims by one or more contractors and/or services providers who provided services as part of the operations of the Project.

Each holder of an Allowed Secured Claim in Class 3 shall receive payment from the proceeds of the refinancing or sale of the Property.

No interest will be paid on account of Class 3 Claims. No Class 3 Claim will be Allowed

to the extent that it is for post-Petition interest or other similar post-Petition charges.

Debtor estimates that there are approximately five to ten creditors in Class 3. Debtor believes the Plan will result in payment in full of Allowed Class 3 Claims. The treatment and consideration to be received by holders of Class 3 Allowed Claims shall be in full settlement, satisfactions, release and discharge of their respective Claims and Liens.

**Class 4**.     General Unsecured Claims. The Class 4 Claims are not Impaired. Each holder of an Allowed Unsecured Claim shall receive payment from the proceeds of the refinancing or sale of the Property. The treatment and consideration to be received by holders of Class 4 Allowed Claims shall be in full settlement, satisfactions, release and discharge of their respective Claims and Liens.

No interest will be paid on account of Class 4 Claims. No Unsecured Claim will be Allowed to the extent that it is for post-Petition interest or other similar post-Petition charges.

General Unsecured Claims in Class 4 are not secured by Property of the Debtor and are not entitled to priority under § 507(a) of the Bankruptcy Code. Any mechanics' lien claims that were not properly filed and perfected prior to the Petition Date will be treated as General Unsecured Claims and included in Class 4.

Debtor estimates that there are five to ten creditors in Class 4. Debtor believes the Plan will result in payment in full of Allowed Class 4 Claims. The treatment and consideration to be received by holders of Class 4 Allowed Claims shall be in full settlement, satisfactions, release and discharge of their respective Claims and Liens.

**D.     Estimation of Distribution to Unsecured Creditors**

At this time, the Claims against Debtor are generally unliquidated and/or disputed. The primary Secured Claim held by Hopkins is expected to be paid in full along with all other

Unsecured Creditors.

   **E.**     **Implementation of the Plan**

       **1.**     **Possession of Assets**. The Debtor shall remain in possession of its Assets in order to effectuate an orderly liquidation of the Assets and shall market the Project for refinancing or sale.

       **2.**     **Transfer of Real Estate Pursuant to 11 U.S.C. § 1146(a)**. The transfer of all real estate under the Plan shall not be taxed under any law imposing a stamp tax or similar tax pursuant to 11 U.S.C. § 1146(a). This exemption shall cover any sale by the Debtor including, without limitation, a sale under Section 363 of the Bankruptcy Code or sale at auction all pursuant to the Plan.

       **3.**     **Funding of Plan**.

           **i.**     **Generally**. The Plan shall be funded by the refinancing or sale of the Debtor's Assets pursuant to Sections 363(b) and (f) of the Bankruptcy Code. Alternatively, if the refinancing does not close/fund or if the Section 363 sale does not occur, then Debtor will proceed to auction the Property for sale with a floor sale price of Four Million Dollars ($4,000,000.00).  Debtor believes this funding of the Plan will maximize proceeds available for distribution by allowing a refinancing or orderly sale of the Property. Debtor believes that, if Hopkins is permitted to execute upon its confessed judgment by sheriff's sale, Hopkins would credit bid at such sale in an amount that would result in there being no proceeds available for distribution to other creditors.

       **ii.**     The Debtor has solicited offers to purchase the Project and intends to continue to market the Project for sale pending a Section 363 sale or auction in a process designed to maximize the value of such assets and Distributions to Claimants.

       **iii.**    Debtor's efforts to date have resulted in an offer to refinance the Property by Tovia Capital in the amount of $3,350,000.00, in accordance with that certain term sheet dated as of January 9,  2024 (the "Tovia Term Sheet"). A copy of the Tovia Term Sheet is attached to the Plan as Exhibit "B".  If the refinancing of the Property does not occur on or before ninety (90) days from the Effective Date of the Plan then Debtor shall proceed with the sale of the Property subject to Sections 363(b) and (f) of the Bankruptcy Code.

       **iv.**    Debtor intends to sell the Project pursuant to Sections 363(b) and (f) of the Bankruptcy Code.  If the sale of the Property pursuant to Sections 363(b) and (f) does not occur on or before one hundred and eighty (180) days from the Effective Date of the Plan then Debtor shall auction the Property for sale.

       **v.**     Debtor intends to solicit bids for the Project in accordance with the bidding procedures attached to the Plan as Exhibit "C" (the "Auction Procedures"). The Auction Procedures describe, among other things, the real estate available for sale, the manner in which bids become "qualified," the coordination of diligence efforts among the bidders and the Debtor, the receipt and negotiation of bids received, the conduct of an Auction, and the selection of the Back-Up Bidder. The Auction Procedures reflect the Debtor's objective of conducting the Auction in a controlled but fair and open manner, while ensuring that the highest and best bid is obtained for the real estate. The Auction Procedures will require a Four Million Dollar ($4,000,000.00) floor sale price.  The sale of the Property through auction shall be completed on or before two hundred and seventy (270) days from the Effective Date of the Plan.

**vi.**      Hopkins shall be afforded the opportunity to credit bid as part of the Auction process. No other Creditors shall be afforded the right to credit bid.

**vii.**      The Debtor will provide notice of the sale following the approval of the Plan and the attached Auction Procedures by first class mail to (1) the Office of the United States Trustee and all secured creditors or their counsel; (2) all persons known to have expressed an interest in acquiring all or any portion of the Debtors' assets or making an equity or other investment in the Debtors within the twelve months prior to the Petition Date; and (3) all other parties that had filed a notice of appearance and demand for service of pleadings as of the date of service (collectively, the "Transaction Notice Parties"). In addition, the Debtor will serve the sale notice on all of the Debtor's known creditors and equity holders, including Hopkins (for which identifying information and addresses are available to the Debtor).

**viii.**      Debtor also proposes, pursuant to Bankruptcy Rules 2002 and 6004, to publish the Sale notice, as modified in a manner appropriate for publication, in The Philadelphia Inquirer by the date that is ten (10) days after the approval of the Auction Procedures or as soon as practicable thereafter. The Debtor requests that such publication notice, if any, be deemed sufficient and proper notice of the sale to any other interested parties whose identities are unknown to the Debtor.

**ix.**      Debtor intends to implement an expeditious refinancing or sale process, subject to Court approval.

**x.**      Debtor has been and will continue to market the Project for refinancing or sale (including, without limitation, for sale under Section 363 of the Bankruptcy Code).

    **xi.**  Pursuant to applicable provisions of Pennsylvania realty transfer tax laws, rules and regulations, Debtor's conveyance of the Project pursuant to this Plan and the order of the Bankruptcy Court shall be exempt from realty transfer taxes.

    **xii.**  The Initial Distribution Date shall be no more than thirty (30) days after the consummation of the Sale and the Sale Hearing in accordance with Section 6.8 of the Plan and the attached Auction Procedures.

    **4.**  <u>**Management of the Liquidating Debtor**</u>. The day to day operational, business and financial affairs of the Liquidating Debtor shall be managed and controlled by the Debtor, as Disbursing Agent, at all times, and shall act to implement the Plan with the sole goal of maximizing the Distributions to Claimants under the Plan. Debtor is currently managed by its D&S Enterprises, Inc., who in turn is managed by its President Scot Powell.

**V.**  <u>**PROVISIONS GOVERNING DISTRIBUTIONS, DISCHARGE AND GENERAL PROVISIONS**</u>

  **A.**  <u>**Distributions**</u>

  The Debtor shall be the disbursing agent herein. The Debtor shall have the sole and exclusive right to make the distributions required by the Plan. The Debtor may hold or invest the funds in one or more accounts, provided that all investments shall be made in accordance with section 345 of the Bankruptcy Code.

  **1.**  <u>**Delivery of Distributions**</u>

  Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest. After one year from the payment

date all unclaimed property will become property of the Debtor, and the Claim of any holder with respect to such property will be discharged and forever barred.

### 2. <u>Means of Cash Payment</u>

Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank. All cash distributions will be made by Debtor.

### 3. <u>Time Bar to Cash Payments</u>

Checks issued by the Debtor in payment of Allowed Claims will be null and void if not cashed within ninety (90) days of the date of their issuance. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to which the check originally was issued. Any Claim relating to a voided check must be made on or before the later of (i) the first anniversary of issuance, or (ii) ninety (90) days after the date the check was voided. After that date, all Claims relating to a voided check will be discharged and forever barred and shall be revested in the Debtor.

### 4. <u>Setoffs</u>

The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any Claims of any nature whatsoever the Debtor may have against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such claim the Debtor may have against such Claimant.

### 5. <u>De Minimis Distributions</u>

No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to the Debtor to make such a payment by the Effective Date of the Plan.

### 6.    **Saturday, Sunday or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

### B.    **Confirmation/Miscellaneous**

**1.**    Except as may be otherwise provided herein, upon the Confirmation Date, all Claims against the Debtor and Debtor-in-Possession shall be satisfied, discharged and released in full; and all holders of Claims and Creditors shall be precluded from asserting against the Debtor, its assets, properties or interest held by it, any other future Claim based upon any transaction or occurrence of any nature that occurred prior to the Confirmation Date.

**2.**    As part of this Plan, title to all assets and properties whatsoever of the Debtor and the Debtor-in-Possession would be sold by the Debtor free and clear of Claims, Liens, encumbrances, security and equitable interests. The order confirming the Plan shall be a judicial determination of the discharge of the liabilities of a Claim against the Debtor and Debtor-in-Possession, except only as may be otherwise provided for this Plan. Confirmation of the Plan shall satisfy all Claims arising out of any Claim settled and satisfied under the terms of the Plan.

**3.**    After the Effective Date, the Debtor shall be entitled to liquidate its assets as outlined in the Plan under the supervision of the Court and in compliance with Section 363 of the Bankruptcy Code.

4.       No default shall be declared under this Plan unless and until any payment due or obligation under this Plan shall not have been made within thirty (30) days after written notice of default is delivered to the Debtor and counsel for the Debtor.  Notice may be delivered by any mode which is assured delivery to the Debtor. It shall be a default under this Plan if the Debtor: (a) defaults in the payment of any obligation under this Plan; or (b) suffers any materially adverse change in its finances or operations such that the objects of the Plan cannot be met by the Debtor.

## VI.     <u>EFFECTS OF CONFIRMATION</u>

### A.      <u>Discharge of Claims; Injunction</u>

Except as otherwise expressly provided in the Plan, the entry of the Confirmation Order shall act to, among other things, permanently enjoin all Persons who have held, hold or may hold Claims of or Interests in the Debtor as of the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, (d) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, and I from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor thereof, or against the property of the Debtor, with respect to any such Claim or Interest. To the extent, however, that the Debtor defaults under the terms of the Plan and such default is not cured within

thirty (30) days after the Debtor and its counsel receive notice of the default as provided under Section 8.2 of the Plan, the injunction shall be void. All Secured Claims under this Plan shall retain their liens until satisfied, notwithstanding the Discharge to be granted by the Plan.

**B.     Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to section 362(a) of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date at which time the injunction under section VI shall be in force.

**C.     Injunction against Interference with Plan**

No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the Plan and the payments made hereunder.

**D.     Vesting of Cash and Assets in the Liquidating Debtor**

Except to the extent otherwise provided in the Plan or restricted by prior order of the Bankruptcy Court, on the Effective Date, all Cash and Assets of the Debtor shall be transferred to and vest in the Debtor free of any Claims, Liens and Interests, to be managed and used for the sole purposes of carrying out the Plan and effectuating the Distributions provided for in the Plan. As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests, except as otherwise specifically provided in the Plan. As of the Effective Date, all mortgages, deeds of trust, Liens or security interests in any property of the Debtor will be released and all the right, title and interest of any Holder of any such mortgages, deeds of trust, Liens or security interests shall be canceled, annulled, terminated and become null and void, except as otherwise specifically provided in the Plan. The Debtor shall be authorized to act as attorney-in-fact for any such Holder to cause all public records to properly reflect and effectuate

this provision. If the Confirmation Order is ever reversed or revoked, this provision of the Plan shall become null and void, and all Liens existing before the Confirmation Date shall be revived.

## VII.    MODIFICATION OF THE PLAN

### A.    Pre-Confirmation Modification

At any time before the Confirmation Date, the Plan may be modified by the Debtor provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

### B.    Pre-Consummation Modification

At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Debtor, provided that the Plan, as modified, does not fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

### C.    Non-Material Modifications

At any time, the Debtor may, without the approval of the Court, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## VIII.    RETENTION OF JURISDICTION

The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a)     to determine any and all objections in the allowance of claims and amendments to schedules;

(b)     to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c)     to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

(d)     to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)     to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executor contracts or unexpired leases pursuant to the Plan;

(f)     to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of , or after, the Confirmation Date;

(g)     to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h)     to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i)     to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes intent and effect of the Plan;

(j)     to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)     to enforce all provisions under the Plan; and

(l)        to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

If the Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

## IX.    CAUSES OF ACTION

### A.    Lawsuits, Etc.

The Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action, except if provided to the contrary herein. Except as otherwise provided in section 12.1 of the Plan, the Debtor reserve the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action.

### B.    Powers

The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any cause of action from time to time in its discretion.

## X.    OBJECTIONS TO CLAIMS

### A.    Objection to Claims

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether

or not the Claim has been scheduled as non-disputed, non-contingent and liquidated. All such objections shall be filed within sixty (60) days of the Effective Date.

### B.    **Contested Claims**

Notwithstanding any other provision of this Plan, a Contested Claim will be paid only after allowance by the Court or upon stipulation of the Debtor and the Claimant involved, as approved by the Court. If allowed, the Contested Claim will become an Allowed Claim and shall be paid on the same terms as if there had been no dispute. The need for resolution of Contested Claims will not delay other payments under the Plan. No distribution shall be made to a Contested Claim until it is Allowed.

### XI.    **CHOICE OF LAW**

Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

### XII.    **EXCULPATION**

Following the Effective Date, neither the Debtor nor any of its officers, directors, members, employees or agents, nor any professional persons employed by any of the foregoing parties, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case; provided, however, that the provisions of this article shall have no effect on the liability of any entity that would

otherwise result from action or omission to the extent that such action or omission is determined

in a Final Order to have constituted gross negligence or willful misconduct.

## XIII.  MISCELLANEOUS

### A.  Payment of Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as

determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will

be paid on or before the Effective Date. Moreover, all post-confirmation quarterly fees shall be

paid by the Debtor as and when they become due until the Bankruptcy Case is closed.

### B.  Discharge of Debtor

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the

Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims and

Equity Interests of any nature whatsoever, including any interest accrued on such Claims from

and after the Petition Date, against the Debtor, any of their assets or properties and the Debtor's

Estate. Except as otherwise provided in this Plan (i) on the Effective Date, all Claims against and

Interests in the Debtor will be satisfied, discharged and released in full and (ii) all Persons shall

be precluded from asserting against Debtor, its successors, or its assets or properties any other or

further Claims or Interests based upon any act or omission, transaction, or other activity of any

kind or nature that occurred before the Confirmation Date.

### C.  Discharge of Claims

Except as otherwise provided in this Plan or in the Confirmation Order, the rights

afforded in this Plan and the payments and distributions to be made under the Plan shall be in

complete exchange for, and in full satisfaction, discharge and release of, all existing debts and

Claims of any kind, nature or description whatsoever against the Debtor or any of its assets or properties; and upon the Effective Date, all existing Claims against the Debtor and all of its assets and properties will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of Claims will be precluded from asserting against Debtor, its successors or its Assets or properties any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date, whether or not the holder filed a proof of claim.

### D.     <u>Effect of Confirmation Order</u>

Except as provided for in this Plan, the Confirmation Order will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Order and any liability on a Claim that is determined under section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under section 502 of the Bankruptcy Code.

### E.     <u>Severability</u>

Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

### F.     <u>Successors and Assigns</u>

The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

### G.     <u>Binding Effect</u>

The Plan will be binding upon and inure to the benefit of the Debtor, its Claimants, the holders of Equity Interests, and their respective successors and assigns.

H.      <u>**Governing Provisions**</u>

Where a provision of this Plan contains a summary or description of one or more provision of any of the documents attached to the Plan as an Exhibit that conflicts or appears to conflict with any such provision of an Exhibit, the provision of the Exhibit will govern.

I.      <u>**Filing of Additional Documents**</u>

On or before substantial consummation of this Plan, the Debtor will file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

J.      <u>**Withholding and Reporting Requirements**</u>

In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

Dated:  January 26, 2024

**D&S ENTERPRISES, INC.,**
a Pennsylvania corporation

By:    ***/s/ Scot Powell***
        Scot Powell, President

**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**

By:    ***/s/ Mark S. Haltzman***
        Mark S. Haltzman, Esquire
        Eric B. Freedman, Esquire
        900 East Eighth Avenue, Suite 300
        King of Prussia, PA 19406
        Attorneys for the Debtor