**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**
By:   Mark S. Haltzman, Esquire
Eric B. Freedman, Esquire
Attorney ID Nos. 38957/319237
900 East Eighth Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115
MHaltzman@sanddlawyers.com
EFreedman@sanddlwyers.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : |
| | : **Chapter 11** |
| D&S Enterprises, Inc., | : |
| | : **Case No. 4:23-bk-13318-PMM** |
| Debtor. | : |
| | : |
| | : |

### SECOND AMENDED PLAN OF LIQUIDATION PROPOSED BY
### D&S ENTERPRISES, INC., A PENNSYLVANIA CORPORATION

Dated: March 19, 2024

Mark S. Haltzman, Esquire
**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**
**Telephone: (610) 263-0115**
**Facsimile: (215) 754-4934**
**mhaltzman@sanddlawyers.com**

{01724322;9}

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    DEFINITIONS .................................................................................................2-8

III.   CLASSIFICATION OF CLAIMS .........................................................................8
       3.1.    Class 1 ...............................................................................................8
       3.2.    Class 2 ...............................................................................................8
       3.3.    Class 3 ...............................................................................................8
       3.4.    Class 4 ...............................................................................................8
       3.5.    Administrative and Priority Tax Claims .............................................8

IV.    TREATMENT OF CLASSES OF CLAIMS .........................................................9
       4.1.    Class 1 ...............................................................................................9
       4.2.    Class 2 ...............................................................................................9
       4.3.    Class 3 .............................................................................................10
       4.4.    Class 4 .............................................................................................11
       4.5.    Treatment of Executory Contracts and Unexpired Leases ....................12

V.     TREATMENT OF UNCLASSIFIED CLAIMS ..................................................12
       5.1.    Administrative Claims ......................................................................12
       5.2.    Priority Tax Claims..........................................................................13

VI.    PROVISIONS FOR EXECUTION OF THE SECOND AMENDED PLAN...........14
       6.1.    Possession of Assets ........................................................................14
       6.2.    Execution of Documents ...................................................................14
       6.3.    Alterations, Amendments or Modification ..........................................14
       6.4.    Disbursing Agent .............................................................................14
       6.5.    Final Decree ....................................................................................14
       6.6.    Retention and Enforcement of Claims .................................................14
       6.7.    Transfer of Real Estate 11 U.S.C. § 1146(a) ......................................14
       6.8.    Funding of Second Amended Plan .....................................................14
       6.9.    Management of the Debtor .................................................................16
       6.10.   Second Amended Plan Events of Default .............................................16
       6.11    Second Amended Plan of Default Remedies .........................................17
       6.12    Fraudulent Conveyance ....................................................................17

VII.   ADDITIONAL PROVISIONS APPLICABLE TO ALL CLASSES ........................16

VIII.  PROVISIONS GOVERNING DISTRIBUTIONS..................................................17
       8.1.    Distributions....................................................................................17
       8.2.    Notices ............................................................................................20

IX.    EFFECTS OF CONFIRMATION ........................................................................20
       9.1.    Discharge of Claims; Injunction .......................................................20
       9.2.    Term of Injunctions or Stays ............................................................21

9.3.   Injunctions against Interference with Second Amended Plan ..............................21
9.4.   Exculpation.........................................................................................21
9.5.   Vesting of Cash and Assets in Liquidating Debtor......................................21

X.   **MODIFICATION OF THE SECOND AMENDED PLAN** ........................................22
10.1.   Pre-Confirmation Modification ....................................................22
10.2.   Pre-Consummation Modification ..................................................22
10.3.   Non-Material Modifications ........................................................22

XI.   **RETENTION OF JURISDICTION** ........................................................22

XII.   **CAUSES OF ACTION** ...........................................................................23
12.1.   Litigation...........................................................................23
12.2   Powers..............................................................................24

XIII.   **MISCELLANEOUS** ..............................................................................24
13.1.   Choice of Law........................................................................24
13.2.   Payment of Statutory Fees ........................................................24
13.3.   Discharge of Debtor.................................................................24
13.4.   Discharge of Claims; Injunction ................................................24
13.5.   Effect of Confirmation Order  ...................................................25
13.6.   Severability .........................................................................25
13.7.   Successors and Assigns ...........................................................25
13.8.   Binding Effect.......................................................................25
13.9.   Withholding and Reporting Requirements ...................................25

XIV.   **PROVISIONS FOR RESOLVING AND TREATING CLAIMS** ...............25
14.1.   Objections  ..........................................................................26
14.2.   Prosecution of Objections.........................................................26
14.3.   No Distributions Pending Allowance ..........................................26
14.4.   Distributions after Allowance....................................................26

**EXHIBIT A**   .............................................................**STALKING HORSE AGREEMENT**
**EXHIBIT B**   .................................................................**AUCTION PROCEDURES**

# ARTICLE I
## Introduction

On November 2, 2023, D&S Enterprises, Inc., a Pennsylvania Corporation, the Debtor and Debtor-in-Possession (the "Debtor"), commenced a bankruptcy case by filing a voluntary Chapter 11 petition under Title 11 of the United States Code, as amended (the "Bankruptcy Code"). Debtor's bankruptcy case was assigned bankruptcy case number 4:23-bk-13318-pmm. On January 26, 2024, Debtor filed its Plan of Reorganization/Liquidation (the "Original Plan"). On March 7, 2024, Debtor filed its Amended Plan of Reorganization/Liquidation (the "Amended Plan"). This document is Debtor's Chapter 11 Second Amended Plan of Liquidation (the "Second Amended Plan") proposed by the Debtor (the "Proponent").

The Proponent submits this Second Amended Plan which proposes:

- Subject to the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court") approval, the Proponent seeks to sell the real property located at 136 Campsite Road, Bernville, Pennsylvania (the "Property"). Proponent will sell the Property and any other assets owned by the Debtor (collectively, the "Project") and satisfy all the claims as provided for hereunder. If Proponent sells the Project it would be to the Stalking Horse Purchaser described hereinafter, subject to higher and better bids at a sale under Section 363 of the Bankruptcy Code, as described hereinafter.

- If the Project is not sold under the provisions of Section 363 of the Bankruptcy Code, then, in the alternative, and with the approval of this Court, the Proponent will auction the Project for sale and satisfy all the claims provided for hereunder on or before the Auction Date described hereinafter.

The Effective Date of the proposed Second Amended Plan is thirty (30) days after the Confirmation Order becomes a Final Order.

Proponent's Second Amended Plan would pay all Claims and Class of Creditors in full based upon the estimated value of the Property.

{01724322;9}

# ARTICLE II
## Definitions

For the purposes of this Second Amended Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires. Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

2.1.    "ACCOUNTS RECEIVABLE" means any account as that term is defined in Section 9106 of the Pennsylvania Uniform Commercial Code, 13 P.S. §1101, et seq. (the "PA U.C.C."), and includes any right of the Debtor to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper (as those terms are defined in the PA U.C.C.), whether or not it has been earned by performance.

2.2.    "ADMINISTRATIVE CLAIM" means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under § 503(b) of the Bankruptcy Code and entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.3.    "ADMINISTRATIVE    CLAIMANT"    means    the    holder    of    an Administrative Claim.

2.4.    "ALLOWED" The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in this case as of the confirmation date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor; (b) is set forth in a Proof of Claim or Interest properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes) as the last day for filing such proof, and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

2.5    "ALLOWED CLAIM" means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

{01724322;9}

2

2.6.    "ALLOWED INTEREST" shall mean an Interest (a) in respect to which a proof of interest has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of equity security holders prepared and filed with the Court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003 or an Order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding and as to which no appeal or certiorari proceeding pending.

2.7.    "ASSETS" means all of the Debtor's property, real and personal, tangible and intangible, including without limitation the Property, Accounts Receivable, goods, chattel paper, documents, instruments, money, fixtures, contract rights, Causes of Action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

2.8.    "AUCTION DATE" the date upon which the Court approves the holding of an auction for the sale of the Project with a floor sale/auction price of Four Million Dollars ($4,000,000.00) which date shall be on or before one hundred and fifty (150) days from the Effective Date of the Second Amended Plan.

2.9.    "BANKRUPTCY CODE" means title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

2.10.    "BANKRUPTCY COURT" or "COURT" means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

2.11.    "BANKRUPTCY RULES" means the Federal Rules of Bankruptcy Procedure, as amended from time to time promulgated by the Supreme Court of the United States.

2.12.    "BAR DATE" means April 15, 2024 which was the date fixed by order of the Court for the filing of proofs of claim.

2.13.    "BUSINESS DAY" means any day except a Saturday, Sunday, or other day on which commercial banks located in the Commonwealth of Pennsylvania, are authorized by law to close.

2.14.    Intentionally Omitted.

2.15.    "CASE" means the bankruptcy case of the Debtor under Chapter 11 of the Bankruptcy Code presently captioned: In re D&S Enterprises, Inc., Case No. 4:23-bk-13318-pmm.

2.16.    "CAUSES OF ACTION" means all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other

federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

2.17.   "CLAIM" means a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

2.18.   "CLAIMANT" means a person or entity holding a Claim (including, his, her or its successors, assigns, heirs, executors, or personal representatives) under the Second Amended Plan.

2.19.   "CLASS" means a group of Claims, consisting of Claims, which are substantially similar to each other, as classified pursuant to this Second Amended Plan.

2.20.   "CONFIRMATION DATE" means the date on which the Confirmation Order confirming the Second Amended Plan at or after a hearing convened pursuant to §1129 of the Bankruptcy Code becomes a Final Order.

2.21.   "CONFIRMATION HEARING" means the hearing at which the Court considers confirmation of this Second Amended Plan.

2.22.   "CONFIRMATION ORDER" means the order of the Court confirming the Second Amended Plan pursuant to §1129 of the Bankruptcy Code.

2.23.   "CONTESTED CLAIM" means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a final order or a Claim which is scheduled as contingent, disputed or unliquidated.

2.24.   "CREDITOR" means the holder of a Claim against the Debtor.

2.25.   "DEBTOR" or "LIQUIDATING DEBTOR" means D&S Enterprises, Inc., a Pennsylvania corporation.

2.26.   "DEFICIENCY CLAIM" means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

2.27.  "DISBURSING AGENT" has the meaning given to such term in Section 6.4 hereof.

2.28.  "DISTRIBUTION" means any payment by the Debtor to a Claimant on account of a Claim.

2.29.  "DISTRIBUTION DATES" means collectively the Initial Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

2.30.  "EFFECTIVE DATE" means the date on which this Second Amended Plan shall become effective, which date shall be thirty days (30) after the Confirmation Order becomes a Final Order. However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

2.31.  "FEE CLAIM" means a Claim under § 330 or § 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

2.32.  "FINAL DECREE" means the decree contemplated under section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

2.33.  "FINAL DISTRIBUTION DATE" means the date of the last payment to Holders of Allowed Claims and Interests in accordance with the provisions of the Second Amended Plan.

2.34.  "FINAL ORDER" means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

2.35.  "HOLDER" means a person or entity holding an Interest or Claim.

2.36.  "HOPKINS" means Hopkins Loan Services, it successors and assigns.

2.37.  "IMPAIRED CLASS" means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.38.  "INITIAL DISTRIBUTION DATE" means the first Business Day that is not less than thirty (30) days after the Effective Date or thirty (30) days after the sale, or as soon as the first Distribution can thereafter be made as determined by the Debtor.

2.39.   "INSIDER" means any "insider" as that term is defined in Paragraphs (B), (E) or (F) of Section 101(31) of the Bankruptcy Code.

2.40.   "INTEREST" means any membership or other equity interest in the Debtor.

2.41.   "LIEN" means, with respect to any of the Assets of the Debtor, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

2.42.   "PERSON" means a person within the meaning of Section 101(41) of the Bankruptcy Code.

2.43.   "PETITION DATE" means November 2, 2023, the date upon which the Debtor filed its petition.

2.44.   "PETITION" means the voluntary petition for liquidation filed by the Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code.

2.45.   "SECOND AMENDED PLAN" means this Second Amended Plan of Liquidation, as it may be amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

2.46.   "SECOND AMENDED PLAN PROPONENT" means the Debtor.

2.47.   "PRIORITY NON-TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

2.48.   "PRIORITY TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(8) of the Bankruptcy Code.

2.49.   "PRO RATA" means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Second Amended Plan on a particular date, the same proportion that the amount of such Allowed Claim bears the aggregate amount of all Claims of such Class, including Contested Claims.

2.50.   "PROOF OF CLAIM" means a proof of claim Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court.

2.51.   "PROJECT" means all property, real and personal, owned by the Debtor (including, without limitation, the Property).

2.52.   "PROPERTY" means the real property and improvements owned by the Debtor at 136 Campsite Road, Bernville, Pennsylvania.

2.53.   "PROPONENT" means the Debtor as Second Amended Plan Proponent.

2.54.   "REJECTION CLAIM" means any Claim for amounts due as a result of the rejection of any executory contract or lease, which is rejected by the Debtor by Final Order.

2.55.   Intentionally Omitted.

2.56.   "RESERVE FUND" means such amount(s) of cash as the Debtor shall determine to be necessary to retain on the Initial Distribution Date and on all Subsequent Distribution Dates through the Final Distribution Date, for the purposes of funding any Distributions to Creditors or Interest Holders of Interests required under the Second Amended Plan (including, without limitation, distributions on account of Disputed Claims as they become Allowed Claims) and paying expenses incurred and to be incurred relating to the implementation and consummation of the Second Amended Plan and the liquidation of the Assets, including, without limitation, the Reserve Amount and such additional amounts as the Debtor shall determine and consent to be necessary to be paid after the Effective Date to any professionals retained by the Debtor in furtherance of the Second Amended Plan. The Debtor may but need not establish a separate bank account for such purposes.

2.57.   "SALE DATE" date upon which the Court approves the sale of the Project to the Stalking Horse Purchaser, subject to higher and better bids at a sale under Section 363 of the Bankruptcy Code which date shall be on or before ninety (90) days from the Effective Date of the Second Amended Plan.

2.58.   "SCHEDULES" means the schedules of assets and liabilities filed by the Debtor with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007, as amended from time to time.

2.59.   "SECURED CLAIM" shall mean a Claim that is (a) secured by a valid, perfected and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a Claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

2.60.   "STALKING HORSE AGREEMENT" means that certain Purchase and Sale Agreement dated February 19, 2024 with Stalking Horse Purchaser, as more particularly described herein.

2.61.   "STALKING HORSE PURCHASER" means David Branton, or a limited liability company to be formed by David Branton.

2.62.   "SUBSEQUENT DISTRIBUTION DATE" means any date after the Initial Distribution Date (a) that is (i) set by the Liquidating Debtor, or (ii) otherwise

ordered by the Bankruptcy Court, and (b) upon which the Debtor makes a Distribution to any Holders of Allowed Claims or Allowed Interests.

2.63. "UNIMPAIRED CLASS" means any Class of Claims, which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.64. "UNSECURED CLAIM" means any Claim, whether or not disputed, liquidated or contingent, including a Rejection Claim or a Deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim or Secured Claim.

# ARTICLE III
## Classification of Claims

As required by the Bankruptcy Code, the Second Amended Plan classifies Claims and Interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Second Amended Plan states whether each class of Claims or Interests is Impaired or Unimpaired. The Second Amended Plan provides the treatment each class will receive under the Second Amended Plan. A Proof of Claim asserting a Claim, which is properly included in more than one class, is included in each such class to the extent that it qualifies within the description of such class.

3.1. **Class 1.** <u>**Priority Tax and Administrative Claims.**</u> Class 1 consists of Secured Claims of any taxing authorities along with any permitted Administrative Claims.

3.2 **Class 2.** <u>**Secured First Mortgage Claim of Hopkins Loan Services.**</u> Class 2 consists of the Secured Claim of Hopkins.

3.3. **Class 3.** <u>**General Secured Claims – Lien Holders.**</u> Class 3 consists of Allowed Secured Claims by Claimants with valid and perfected lien rights against the Project, which are subordinate to the Mortgage of Hopkins.

3.4. **Class 4**. <u>**General Unsecured Claims**</u>. Class 4 consists of the Allowed Unsecured Claims including all penalties of any priority claims not otherwise classified herein.

3.5. <u>Administrative and Priority Tax Claims</u>. As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Second Amended Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article V of this Second Amended Plan.

## ARTICLE IV
## Treatment of Classes of Claim

The Second Amended Plan divides Claims and Interests into various separate classes. Under the Second Amended Plan, there are four (4) separate classes of creditors (classes 1 through 4).

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and Distribution pursuant to the Second Amended Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

4.1. **Class 1.** <u>Priority Tax and Administrative Claims</u>**.** Class 1 is not impaired. Except as otherwise provided herein, the treatment and consideration to be received by Class 1 shall be in full settlement, satisfaction, release and discharge of its respective Claims and Liens. Class 1 Priority Claims shall receive one hundred (100%) percent of their Claim. Post-confirmation interest at the statutory rate will be paid on the principal portion of the Claim. In the event a sale of the Property occurs, any amounts remaining due to the holder of the Class 1 Claim will be paid in accordance with and subject to the approval of the Court. Payment of the Office of the United States Trustee fees shall be considered a Class 1 Claim.

4.2 **Class 2.** <u>Secured First Mortgage Claim of Hopkins</u>. The Class 2 Claim is unliquidated and undisputed. Based on available information, the Debtor assumes that Class 2 will assert a Secured Claim of $2,778,836.97 as of November 2, 2023 based on a judgment confessed by Hopkins against Debtor.

Such Claim is based upon an Open End Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing (collectively, the "Mortgage") between Debtor and Hopkins.

The amount of the judgment confessed by Hopkins is undisputed by Debtor.

The Debtor shall pay all current and post-petition real estate taxes, maintain, and insure the Property. Debtor will provide Hopkins with proof of payment of real estate taxes within five business days of payment. Debtor shall list Hopkins as a loss payee on its insurance covering the Property. Debtor shall, on the Effective Date and every 6 months thereafter, provide to Hopkins a copy of its current insurance policy listing Hopkins as a loss payee.

The unpaid principal balance of the Class 2 Claim shall accrue interest at regular rates under the applicable loan documents from and after the Effective Date through the date of the sale of the Property pursuant to this Second Amended Plan. Such interest, however, shall not accrue on unpaid interest, late charges or fees.

Debtor asserts that the fair market value of the Property, as evidenced by the Stalking Horse Agreement, a copy of which is annexed hereto and made a part hereof as Exhibit "A", which is the value of the collateral for the Hopkins loan significantly exceeds the amount of Hopkins' Claim and therefore the Claim of Hopkins should be treated as a fully-secured Claim. Debtor asserts that even if the Property must be sold through an auction the liquidation value of the Property would exceed $4,000,000.00 which is sufficient to pay in full Hopkins and all other Allowed Claims.

The Allowed Class 2 Claim shall be paid from the proceeds of any sale of the Project pursuant to 11 U.S.C. 363(d), (e), or such other provision as may apply, after payment of Allowed Administrative Claims and Allowed Priority Tax Claims.

The Debtor believes that the Class 2 Claim will not be Impaired. Based on the existing Stalking Horse Agreement with a sale price of approximately $5,200,000 or through an auction of the Property, the proceeds from the sale of the Property are expected to be sufficient to pay in full all Allowed Claims.

As a result of the planned liquidation of the Property by Section 363 sale or by sale to Stalking Horse Purchaser through a Section 363 sale to the Stalking Horse Purchaser, there will be proceeds available for Distribution hereunder to Administrative Claims, Priority Tax Claims/Class 1, Class 2 Claims, Class 3 Claims and Class 4 Claims that would not be available if Hopkins proceeded to execute upon its confessed judgment and took possession of the Project by credit bid at a subsequent sheriff's sale (as expected if Debtor's Case does not proceed).

Pursuant to the Second Amended Plan, the Project is to be sold free and clear of all Claims and Liens, including the Mortgage of Hopkins, either pursuant to the Stalking Horse Agreement or to the highest and best bidder pursuant to a Sale under Section 363 of the Bankruptcy Code. The treatment and consideration to be received by Hopkins, as holder of an Allowed Secured Claim, shall be in full settlement, satisfaction, release and discharge of its Claim and Lien on the Project.

Concurrent with the sale of the Property, which sale must be approved by the Court, Debtor shall pay in full Hopkins' Claim as of the Petition Date in the amount of $2,778,836.97, and any Post-Petition charges or fees that have either been approved by the Court or which are not objected to by Debtor. Upon payment of Hopkins' Claim, and any Post-Petition charges or fees, Hopkins shall withdraw its confessed judgment and dismiss all related litigation with respect thereto.

On the Initial Distribution Date or as soon as practicable after the Claim becomes an Allowed Claim (and no later than the thirtieth (30th) day of the first month after the

{01724322;9}

Claim becomes Allowed), each Holder of an Allowed Class 2 Claim shall receive cash in the full amount of such Claim.

4.3.  **Class 3.**    General Secured Claims. The Class 3 Claims are not impaired. Class 3 Claims are expected to include Claims by one or more contractors and/or services providers who provided services as part of the operations of the Project. Class 3 Claims will also include Creditors with valid and perfected liens against the Project more than 90 days prior to the Petition Date.

Each holder of an Allowed Secured Claim in Class 3 shall receive payment from the proceeds of the sale of the Property.

Debtor believes that the Second Amended Plan will result in payment in full of Allowed Class 3 Claims. The treatment and consideration to be received by holders of Class 3 Allowed Claims shall be in full settlement, satisfactions, release and discharge of their respective Claims and Liens.

No interest will be paid on account of Class 3 Claims. No Class 3 Claim will be allowed to the extent that it is for post-Petition interest or other similar post-Petition charges.

On the Initial Distribution Date or as soon as practicable after the Claim becomes an Allowed Claim (and no later than the thirtieth (30th) day of the first month after the Claim becomes Allowed), each Holder of an Allowed Class 3 Claim shall receive cash in the full amount of such Claim.

Notwithstanding the foregoing, nothing herein shall modify, affect, or impair that certain Promissory Note and Security Agreement (Contract No. 001-801159473) ("Security Agreement") by and between Caterpillar Financial Services Corporation ("CAT Financial") and the Debtor and the liens of CAT Financial relating to a 2018 Caterpillar 259D Compact Track Loader (S/N FTL17024) (the "CAT Equipment") granted thereunder. The Debtor shall continue to make monthly payments at amounts set forth in the Security Agreement (1) prior to confirmation of the plan as adequate protection to CAT Financial and (2) following confirmation of the plan until CAT Financial's claim, together with post-petition interest fees and costs to the extent available under 11 U.S.C. 506(b), is paid full from the sale of the Property. Notwithstanding anything to the contrary in this Second Amended Plan, Debtor shall not seek to sell the CAT Equipment absent the agreement of CAT Financial or further order of Court. Should Debtor fail to make monthly payments to CAT Financial required hereunder and such failure continues for seven (7) days following notice to Debtor's counsel (which notice may be sent by electronic mail), CAT Financial can immediately file an action in the Bankruptcy Court to have the bankruptcy stay lifted as to its claim.

4.4.  **Class 4.**    General Unsecured Claims. The Class 4 Claims are not impaired. Each holder of an Allowed Unsecured Claim shall receive payment from the proceeds of the sale of the Property. The treatment and consideration to be received by

{01724322;9}

holders of Class 4 Allowed Claims shall be in full settlement, satisfactions, release and discharge of their respective Claims and Liens.

No interest will be paid on account of Class 4 Claims. No Unsecured Claim will be allowed to the extent that it is for post-Petition interest or other similar post-Petition charges.

General Unsecured Claims in Class 4 are not secured by Property of the Debtor and are not entitled to priority under § 507(a) of the Bankruptcy Code. Any mechanics' lien claims or other liens that were not properly filed and perfected prior to the Petition Date will be treated as General Unsecured Claims and included in Class 4.

On the Initial Distribution Date or as soon as practicable after the Claim becomes an Allowed Claim (and no later than the thirtieth (30th) day of the first month after the Claim becomes Allowed), each Holder of an Allowed Class 4 Claim shall receive a payment in cash equal to the prorated amount that each Allowed Class 4 Claim bears to the total of Allowed Class 3 Claims (to the extent available).

    4.5.   <u>Treatment of Executory Contracts and Unexpired Leases</u>. Executory contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.

**ARTICLE V**
**<u>Treatment of Unclassified Claims</u>**

    5.1.   <u>Administrative Claims</u>. All Administrative Claims shall be treated as follows:

    a.   <u>Time for Filing Administrative Claims.</u> The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within thirty (30) days after the Confirmation Date. Such notice must include at minimum (i) the name of the holder of the Claim, (ii) the amount of the claim and (iii) the basis of the Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

    b.   <u>Time for Filing Fee Claims</u>. Each professional person requesting compensation in the case pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than thirty (30) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged. Nothing herein shall prohibit each

professional person from requesting interim compensation during the course of this case pending Confirmation of this Second Amended Plan. Any professional person's Fee Claim shall be permitted to include in its request for payment of a Fee Claim fees and expenses incurred for the preparation, filing and prosecution of such Fee Claim. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

      c.    Allowance of Administrative Claims. An Administrative Claim with respect to which notice has been properly filed pursuant to Section 5.1(a) of this Second Amended Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to its fee application has been properly filed pursuant to Section 5.1(b) of the Second Amended Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

      d.    Payment of Allowed Administrative Claim. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date and so long as such modification of treatment made by the Debtor and any holder of an allowed administrative claim does not impair any other class, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

      e.    Professional Fees Incurred After the Effective Date. Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid without further Bankruptcy Court authorization. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

    5.2.    Priority Tax Claims. Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) Priority Tax Claim receive the present value of such Claim in one lump sum if the Claim is ultimately allowed after any objection by the Debtor is litigated to conclusion or settled.

Each Holder of such an Allowed Priority Tax Claim shall be paid in full in the amount of the Allowed Claim, without interest, in Cash on the later of the Initial

{01724322;9}

Distribution Date (or as soon thereafter as Cash is available) or within sixty (60) days after the Claim becomes an Allowed Claim; provided, however, the Holder of an Allowed Priority Tax Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder and the Debtor.

## ARTICLE VI
### Provisions for Execution of the Second Amended Plan

6.1.   <u>Possession of Assets</u>. The Debtor shall remain in possession of its Assets in order to effectuate an orderly liquidation of the Assets.

6.2.   <u>Execution of Documents</u>. Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents, to take, and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Second Amended Plan.

6.3.   <u>Alterations, Amendments or Modifications</u>. This Second Amended Plan may be altered, amended, or modified by the Proponent before or after the Confirmation Date, as provided in §1127 of the Bankruptcy Code.

6.4.   <u>Disbursing Agent</u>. The Debtor shall be the Disbursing Agent herein, and shall have the sole and exclusive right to make the distributions required by the Second Amended Plan. The Debtor may hold or invest the funds in one or more accounts, provided that all investments shall be made in accordance with 11 <u>U.S.C.</u> §345.

6.5.   <u>Final Decree</u>. After final distributions are made, the Debtor shall file a motion to close the case and request that a Final Decree be issued. The Debtor shall file all interim and final plan implementation reports and pay any fees to the Office of the United States Trustee.

6.6.   <u>Retention and Enforcement of Claims.</u> Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Debtor shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under 11 <u>U.S.C.</u> §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

6.7.   <u>Transfer of Real Estate Pursuant to 11 U.S.C. § 1146(a)</u>. The transfer of the Property shall be pursuant the Court's approval of the Second Amended Plan, and shall therefore not be subject to any tax under any law imposing a stamp tax or similar tax under 11 U.S.C. § 1146(a). This exemption includes any sale by the Debtor of the Property to the Stalking Horse Purchaser or to the highest and best bidder at the auction.

6.8.   <u>Funding of Second Amended Plan.</u>

a. The Second Amended Plan shall be funded by the sale of the Project pursuant to Sections 363(b) and (f) of the Bankruptcy Code, subject to the Stalking Horse Agreement. Alternatively, if the Section 363 sale does not occur, then Debtor will proceed to auction the Property for sale with a floor sale price of Four Million Dollars ($4,000,000.00). Debtor believes this funding of the Second Amended Plan will maximize proceeds available for distribution by allowing for an orderly sale of the Property.

b. The Debtor has solicited offers to purchase the Property in a manner designed to maximize the value of the Project.

c. Debtor's efforts to date have resulted in an offer by Stalking Horse Purchaser to acquire the Project for a purchase price of $5,200,000.00, subject to higher and better offers, in accordance with that certain Purchase and Sale Agreement dated as of February 19, 2024 (the "Stalking Horse Agreement"), which contemplates a sale pursuant to Sections 363(b) and (f) of the Bankruptcy Code. A copy of the Stalking Horse Agreement is annexed hereto and made a part hereof as Exhibit "A". Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Stalking Horse Agreement. The Stalking Horse Agreement contains no material contingencies except for a forty-five (45) day due diligence period, which expires on April 4, 2024, and Bankruptcy Court approval of the Sale free and clear of Liens and Claims. If the sale of the Property pursuant to Sections 363(b) and (f) does not occur on or before ninety (90) days from the Effective Date of the Second Amended Plan then Debtor shall auction the Property for sale.

d. Subject to Court approval, the Stalking Horse Purchaser shall have an Allowed Administrative Claim in the amount of the Bid Protection, as defined in the Stalking Horse Agreement

e. Debtor intends to auction the Project for sale in accordance with the auction procedures attached hereto as Exhibit "B" (the "Auction Procedures"). The Auction Procedures describe, among other things, the real estate available for sale, the manner in which bids become "qualified," the coordination of diligence efforts among the bidders and the Debtor, the receipt and negotiation of bids received, the conduct of the auction, and the selection of the Back-Up Bidder. The Auction Procedures reflect the Debtor's objective of conducting the auction in a controlled but fair and open manner, while ensuring that the highest and best bid is obtained for the real estate. The Auction Procedures will require a Four Million Dollar ($4,000,000.00) floor sale price. The sale of the Property through auction shall be completed on or before on hundred and fifty (150) days from the Effective Date of the Second Amended Plan.

f. Hopkins shall be afforded the opportunity to credit bid the amount of its Allowed Secured Claim as part of the auction process. No other Creditors of Debtor will be permitted to credit bid.

{01724322;9}

g.      The Debtor will provide notice of the sale following the approval of the Second Amended Plan and the attached Auction Procedures by first class mail to (1) the Office of the United States Trustee and all secured creditors or their counsel; (2) all persons known to have expressed an interest in acquiring all or any portion of the Debtor's assets or making an equity or other investment in the Debtor within the twelve months prior to the Petition Date; (3) counsel to the Stalking Horse Purchaser; and (4) all other parties that had filed a notice of appearance and demand for service of pleadings as of the date of service (collectively, the "Transaction Notice Parties"). In addition, the Debtor will serve the auction notice on all of the Debtor's known creditors and equity holders, including Hopkins (for which identifying information and addresses are available to the Debtor).

h.      The Debtor also proposes, pursuant to Bankruptcy Rules 2002 and 6004, to publish the auction notice, as modified in a manner appropriate for publication, in The Philadelphia Inquirer by the date that is ten (10) days after the approval of the Auction Procedures or as soon as practicable thereafter. The Debtor requests that such publication notice, if any, be deemed sufficient and proper notice of the auction to any other interested parties whose identities are unknown to the Debtor.

i.      Pursuant to applicable provisions of Pennsylvania realty transfer tax laws, rules and regulations, Debtor's conveyance of the Project pursuant to this Second Amended Plan and the order of the Bankruptcy Court shall be exempt from realty transfer taxes.

j.      The Initial Distribution Date shall be no more than thirty (30) days after the consummation of the sale of the Property.

6.9.    <u>Management of the Debtor</u>. The day-to-day operational, business and financial affairs of the Liquidating Debtor shall be managed and controlled by the Debtor, as Disbursing Agent, who at all times, shall act to implement the Second Amended Plan with the sole goal of maximizing the Distributions to Claimants under the Second Amended Plan. Debtor shall continue to be managed by D&S Enterprises, Inc., a Pennsylvania corporation, who in turn is managed by Scot Powell.

6.10.    <u>Second Amended Plan Events of Default</u>. The following are "<u>Second Amended Plan Events of Default</u>" applicable to all Classes:

A.    <u>Real Estate Taxes</u>. The failure of the Debtor to pay all post-petition real estate taxes within thirty days after the last date to pay at the "Flat Rate" in the real estate tax bill;

B.    <u>Insurance Default</u>. The failure of the Debtor to maintain insurance at the current coverage levels on the Debtor's Property.

{01724322;9}

6.11.  <u>Second Amended Plan Default Remedies</u>. Following an Second Amended Plan Event of Default, the party alleging default shall provide a notice to the Debtor and all creditors of the alleged Default. The Debtor shall have thirty (30) days to cure said Event of Default.   In the event that Debtor fails to cure the Event of Default within the applicable grace and notice periods, the creditor can immediately file an action in the Bankruptcy Court to have the bankruptcy stay lifted as to its claim.

6.12.  <u>Fraudulent Conveyance</u>. At this time, the Debtor is not aware of, and does not intend to pursue, any preference, fraudulent conveyance or other avoidance actions.

## ARTICLE VII
## Additional Provisions Applicable To All Classes

7.1.  The Debtor shall remain current on all post-confirmation obligations with respect to the Property and will keep general liability insurance naming the Class 2 Claimant as an additional insured.

7.2.  The payments, distributions and other treatments provided in respect of each Allowed Claim and Allowed Interest in the Second Amended Plan shall be in full settlement and complete satisfaction discharge and release of such Allowed Claim and Allowed Interest.

7.3.  Notwithstanding any of the provisions of the Second Amended Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim or Interest which at such date or time are disputed, unliquidated or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or an Allowed Interest, whereupon such payment and distribution shall be made promptly pursuant to and in accordance with this Second Amended Plan.

7.4.  If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests are Impaired under the Second Amended Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Second Amended Plan shall govern.

## ARTICLE VIII
## Provisions Governing Distributions and General Provisions

8.1.  <u>Distributions</u>. Distributions pursuant to this Second Amended Plan shall be made by the Disbursing Agent as provided herein and shall be made pursuant to the Second Amended Plan, unless otherwise provided herein, as soon as practicable after the Sale or as may be otherwise ordered by the Court.

{01724322;9}

a.    Delivery of Distributions. Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest. All Claims for undeliverable distributions must be made to the Disbursing Agent on or before the later of (i) the first anniversary of the Effective Date, or (ii) ninety (90) days after the respective distribution was made. After that date, all unclaimed property will become property of the Debtor, and the Claim of any holder with respect to such property will be discharged and forever barred.

b.    Means of Cash Payment. Cash payments made pursuant to the Second Amended Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank. All cash distributions will be made by the Disbursing Agent.

c.    Time Bar to Cash Payments. Checks issued by the Disbursing Agent in respect to Allowed Claims will be null and void if not cashed within ninety (90) days of the date of their issuance. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim with respect to the check that was originally was issued. Any Claim relating to a voided check must be made on or before the later of the (i) first anniversary of the Effective Date, or (ii) ninety (90) days after the date the check was voided. After the date, all Claims will be discharged and forever barred and the cash, including interest earned shall be revested in the Debtor.

d.    Setoffs. The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Second Amended Plan in respect of the Claim, any Claims of any nature whatsoever the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such Claim the Debtor may have against such Claimant.

e.    De Minimis Distributions. No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to Debtor to make such a payment.

f.    Contested Claims. Notwithstanding all references in the Second Amended Plan to Claims that are Allowed, in undertaking the calculations concerning Allowed Claims or under the Second Amended Plan, including the determination of the amount of Distributions due to the Holders of Allowed Claims or Interests, each Contested Claim or Interest shall be treated as if it were an Allowed Claim or Interest, as appropriate, except that if the Bankruptcy Court estimates the likely portion of a Contested Claim or Interest to be Allowed or

otherwise determines the amount which would constitute a sufficient reserve for a Contested Claim or Interest (which estimations and determinations may be requested by the Debtor), such amount as determined by the Bankruptcy Court shall be used as to such Claim.

The Distributions due in respect of Contested Claims or Interests based on the calculations required by the Second Amended Plan shall be reserved for the Holders of the Contested Claims or Interests and held in the Reserve Fund. The amount(s) so reserved on account of a Creditor is referred to herein as the "Reserve Amount."

After an objection to a Contested Claim or Interest is withdrawn or determined by Final Order, the Distributions due on account of any resulting Allowed Claim or Interest shall be paid by the Debtor from the Reserve Fund to such Creditor or Holder of an Interest. Such payment shall be made on the earlier of (a) the next Distribution Date for Claims or Interests of the Class or type of the Claim or Interest of such Holder and (b) within forty-five (45) days of the date the Claim or Interest becomes an Allowed Claim or Allowed Interest. No interest shall be due to a Contested Claim or Interest Holder based on the delay attendant to determining the allowance of such Claim except as set forth in this subsection.

Should the Allowed Claim of such Creditor or Holder of an Interest exceed the Reserve Amount, the shortfall may be paid from available sums, if any, for the next Distribution, provided that, in no event shall the Creditor or Holder of an Interest have recourse to (i) any payments already made to others; (ii) sums reserved by the Debtor in connection with Administrative Claims, Other Priority Claims, and Secured Claims; or (iii) other sums reserved for ongoing fees and costs of effectuating the Second Amended Plan.

After an objection to a Contested Claim or Interest is sustained in whole or in part by a Final Order, any Reserve Amount for such Claim or Interest held in the Reserve Fund in excess of the Distribution due on account of any resulting Allowed Claim or Interest may be removed by the Debtor from the Reserve Fund and treated as available funds for ongoing costs and fees or for distribution to other Creditors or Holders of Interests.

At the Debtor's election, any property that is unclaimed for ninety (90) days after Distribution thereof by mail to the last known mailing address of the party entitled thereto, shall revest in the Debtor as available funds for ongoing costs and fees or for distribution to other Creditors or Holders of Interests. Notwithstanding the foregoing, if any mail sent to a Creditor or Holder of an Interest at the last known mailing address by the Debtor is returned without a forwarding address and the Creditor or Holder of an Interest does not claim its Distribution within ninety (90) days after it is mailed to the Creditor, the Debtor may strike the Creditor's Claim from the Creditor list or Holders' Interest from the list of Interest Holders, issue no more checks to such Creditor or Holder of an

Interest and, for the purposes of future Distributions, treat the Claim or Interest as if it were disallowed.

        g.     <u>Saturday, Sunday or Legal Holiday</u>. If any payment or act under the Second Amended Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

    8.2.    <u>Notices</u>. Any notice described in or required by the terms of this Second Amended Plan or the Bankruptcy Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified mail, return receipt requested, and if sent to:

        (a)    <u>If to the Debtor</u>, addressed to:
                D&S Enterprises, Inc.
                136 Campsite Road
                Bernville, PA 19506

        (b)    <u>With copies to Counsel</u>:
                Mark S. Haltzman, Esquire
                Silverang, Rosenzweig
                 & Haltzman, LLC
                900 East Eighth Avenue, Suite 300
                King of Prussia, PA 19406
                Email: mhaltzman@sanddlawyers.com

Notice may sent by electronic mail to Debtor's counsel, provided that the sender has obtained a read receipt for any such electronic mail notice.

**ARTICLE IX**
**<u>Effects of Confirmation</u>**

    9.1.    <u>Discharge of Claims; Injunction</u>. Except as otherwise expressly provided in the Second Amended Plan, the entry of the Confirmation Order shall act to, among other things, permanently enjoin all Persons who have held, hold or may hold Claims of or Interests in the Debtor as of the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim of or Interest in the Debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, (d) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, and (e)

{01724322;9}

from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor thereof, or against the property of the Debtor, with respect to any such Claim or Interest. To the extent, however, that the Debtor defaults under the terms of the Second Amended Plan and such default is not cured within thirty (30) days after the Debtor and its counsel receive notice of the default, as provided for under Sections 8.2 of the Second Amended Plan, the injunction shall be void.

9.2.    Term of Injunctions or Stays. Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to section 362(a) of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date at which time the injunctions under this Article IX shall be in force.

9.3.    Injunction against Interference with Second Amended Plan. No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the Second Amended Plan and the payments to be made hereunder.

9.4.    Exculpation. Following the Effective Date, neither the Debtor nor any of their officers, directors, members, employees or agents, nor any professional persons employed by any of the foregoing parties, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Second Amended Plan, any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Second Amended Plan or this Chapter 11 case; provided, however, that the provisions of this article shall have not effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

9.5.    Vesting of Cash and Assets in the Liquidating Debtor. Except to the extent otherwise provided in the Second Amended Plan or restricted by prior order of the Bankruptcy Court, on the Effective Date, all Cash and Assets of the Debtor shall be transferred to and vest in the Debtor free of any Claims, Liens and Interests, to be managed and used for the sole purposes of carrying out the Second Amended Plan and effectuating the Distributions provided for in the Second Amended Plan. As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests, except as otherwise specifically provided in the Second Amended Plan. As of the Effective Date, all mortgages, deeds of trust, Liens or security interests in any property of the Debtor will be released and all the right, title and interest of any Holder of any such mortgages, deeds of trust, Liens or security interests shall be canceled, annulled, terminated and become null and void, except as otherwise specifically provided in the Second Amended Plan. The Debtor shall be authorized to act as attorney-in-fact for any such Holder to cause all public records to properly reflect and effectuate this provision. If the Confirmation Order is ever reversed or revoked, this provision of the Second Amended Plan shall become null and void, and all Liens existing before the Confirmation Date shall be revived.

{01724322;9}

## ARTICLE X
## Modification of the Second Amended Plan

10.1.    <u>Pre-Confirmation Modification</u>. At any time before the Confirmation Date, the Second Amended Plan may be modified by the Proponent upon approval of the Bankruptcy Court, provided that the Second Amended Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. In the event that there is a further modification of the Second Amended Plan, then the Second Amended Plan as modified, shall become the new Plan.

10.2.    <u>Post-Consummation Modification</u>. At any time after the Confirmation Date of the Second Amended Plan, but before substantial consummation of the Second Amended Plan, the Second Amended Plan may be modified by the Proponent upon approval of the Bankruptcy Court, provided that the Second Amended Plan, as further modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. The Second Amended Plan, as further modified under these sections, becomes the Plan only if the Court, after notice and hearing, confirms such Second Amended Plan, as further modified, under Section 1129 of the Bankruptcy Code.

10.3.    <u>Non-Material Modifications</u>. At any time, the Proponent may, without the approval of the Court, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Second Amended Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Second Amended Plan.

## ARTICLE XI
## Retention of Jurisdiction

11.1.    The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a)    to determine any and all objections in the allowance of Claims and amendments to schedules;

(b)    to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c)    to determine any and all disputes arising under or in connection with the Second Amended Plan, the sale of any of the Debtor's assets, collection or recovery of any assets (other than under or in connection with the Post-Effective Date Loan Documents);

{01724322;9}

(d)     to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)     to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Second Amended Plan;

(f)     to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

(g)     to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h)     to modify any provision of the Second Amended Plan to the full extent permitted by the Bankruptcy Code;

(i)     to correct any defect, cure any omission or reconcile any inconsistency in the Second Amended Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Second Amended Plan;

(j)     to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)     to enforce all provisions under the Second Amended Plan;

(l)     to enter any order, including injunctions, necessary to enforce the terms of the Second Amended Plan, the powers of the Debtor under the Bankruptcy Code, this Second Amended Plan and as the Court may deem necessary.

11.2    If the Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including any of the matters set forth in the Second Amended Plan, the Second Amended Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

## ARTICLE XII
## Causes of Action

12.1.   <u>Litigation</u>. Except as otherwise provided in section 12.2 of this Second Amended Plan, the Debtor reserves the right to initiate or continue any litigation or

adversary proceeding permitted under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action.

      12.2.   Powers. The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its discretion.

**ARTICLE XIII**
**Miscellaneous**

      13.1.   Choice of Law. Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Second Amended Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

      13.2.   Payment of Statutory Fees. All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date. Moreover, all post-confirmation quarterly fees shall be paid by the Debtor as and when they become due until the Bankruptcy Case is closed.

      13.3.   Discharge of Debtor. Except as otherwise provided in this Second Amended Plan, the rights afforded in the A Second mended Plan and the treatment of all Claims of and Interests in the Second Amended Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, any of its assets or properties and the Debtor's Estate. Except as otherwise provided in this Second Amended Plan (i) on the Effective Date, all Claims against the Debtor will be satisfied, discharged and released in full and (ii) all Persons shall be precluded from asserting against Debtor, its successors, or its assets or properties any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

      Notwithstanding the forgoing, the discharge granted by 11 U.S.C. § 1141 (d) is modified as to the secured or priority tax debt provided for in the Second Amended Plan, and the discharge of any secured or priority tax debt under this Second Amended Plan shall not be effective until all secured or priority taxes provided for in the Second Amended Plan have been paid in full.

      13.4.   Discharge of Claims; Injunction. The rights afforded in this Second Amended Plan and the payments and distributions to be made under the Second Amended Plan shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature or description whatsoever against the Debtor, the estate or any of their Assets, and upon the Effective Date, all existing Claims against the Debtor, the estate and all of their assets and properties will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders

of Claims shall be precluded and enjoined from asserting against the Debtor, the Debtor, their successors or their respective Assets or properties any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the holder filed a proof of claim. It is acknowledged, however, that if the Debtor is in default under the terms of the Second Amended Plan, and such default is not cured within ten (10) days after notice of the default is provided to the Debtor and its counsel in accordance with the notice provision under Section 8.2 of the Second Amended Plan, the injunction will be void and such injunction shall not effect claims under the Post-Effective Date Loan Documents.

13.5. <u>Effect of Confirmation Order</u>. Except as provided in Section 1141(d) of the Bankruptcy Code and as otherwise provided in the Second Amended Plan, the provisions of the Second Amended Plan and the Confirmation Order shall bind the Debtor and all holders of Claims or Interests and will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code and whether or not such holder is impaired under the Second Amended Plan and whether or not such holder has accepted the Second Amended Plan, and shall terminate all rights, Claims and Interests of such holder, except as provided in the Second Amended Plan.

13.6. <u>Severability</u>. Should any provision in this Second Amended Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Second Amended Plan.

13.7. <u>Successors and Assigns</u>. The rights and obligations of any person named or referred to in the Second Amended Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

13.8. <u>Binding Effect</u>. The Second Amended Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, the holders of Interests, and their respective successors and assigns.

13.9. <u>Withholding and Reporting Requirements</u>. In connection with the Second Amended Plan and all instruments issued and distributions made pursuant to the Second Amended Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Second Amended Plan will be subject to any such withholding and reporting requirements.

**ARTICLE XIV**
**<u>Provisions for Resolving and Treating Claims</u>**

{01724322;9}

14.1.   <u>Objections</u>. Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any Claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated.

14.2.   <u>Prosecution of Objections</u>. After the date of entry of the Confirmation Order, the Debtor or any other Claimant will have authority to file objections, litigate to judgment, settle or withdraw objections to Contested Claims.

14.3.   <u>No Distributions Pending Allowance</u>. No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim. If only a portion of a Claim is disputed (and in the absence of a basis for set off or counterclaim), the distribution will be made on a pro rata basis on the uncontested portion of the claim, pending resolution of the portion which is disputed.

14.4.   <u>Distributions after Allowance</u>. Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Second Amended Plan governing the Class of Claims to which the respective holder belongs as soon as practicable after the date that the order or judgment of the Court allowing the Claim becomes a Final Order.

[Signature Page Follows]

{01724322;9}

Dated:  March 19, 2024

**D&S ENTERPRISES, INC.,**
a Pennsylvania corporation


By: _____ */s/ Scot Powell* _____
    Scot Powell, President



**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**

By: */s/ Mark S. Haltzman* _____
    Mark S. Haltzman, Esquire
    900 East Eighth Avenue, Suite 300
    King of Prussia, PA 19406
    Attorneys for the Debtor

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| D&S Enterprises, Inc., | : | |
| | : | **Case No. 4:23-bk-13318-pmm** |
| *Debtor.* | : | |
| | : | |

## CERTIFICATE OF SERVICE

This is to certify that on the 19th day of March, 2024, I served the foregoing *Second Amended Plan of Reorganization/Liquidation*, via the Court's electronic filing system (ECF) upon the following:

DAVE P. ADAMS on behalf of U.S. Trustee United States Trustee
dave.p.adams@usdoj.gov

CSU - OUCTS, PA Department of Labor and Industry
ra-li-beto-bankreading@state.pa.us

KELLY LYN EBERLE on behalf of Creditor Hopkins PA Campground, LLC
keberle@grimlaw.com, ksaborsky@grimlaw.com

HOWARD GERSHMAN on behalf of Creditor CAB East LLC/Ford Motor Credit Company LLC
hg229ecf@gmail.com, 229ecf@glpoc.comcastbiz.net

HOWARD GERSHMAN on behalf of Creditor Ford Motor Credit Company LLC
hg229ecf@gmail.com, 229ecf@glpoc.comcastbiz.net

MARK D. PFEIFFER on behalf of Creditor Caterpillar Financial Services Corporation
mark.pfeiffer@bipc.com, donna.curcio@bipc.com;joseph.roadarmel@bipc.com;eservice@bipc.com

HOLLY SMITH MILLER, ESQ.
hsmiller@gsbblaw.com, chsm11@trustesolutions.net

JOSEPH JASPER SWARTZ on behalf of Creditor PA Dept of Revenue
RA-occbankruptcy2@state.pa.us, RA-occbankruptcy6@state.pa.us

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

WALTER WEIR, JR. on behalf of Creditor Scot J Powell
wweir@wgpllp.com, smorris@weirpartners.com

{01724322;9}                              1

SILVERANG ROSENZWEIG
& HALTZMAN, LLC

Date: 3/19/2024                By:    _/s/  Mark S. Haltzman_____
                                      Mark S. Haltzman, Esquire
                                      *Attorney for Debtor, D&S Enterprises, Inc.*

{01724322;9}